IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROLAND WILLIAMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 06-142-GMS |
| | ) | |
| MICHAEL DELOY, Warden, and | ) | |
| JOSEPH J. BIDEN, III, Attorney General | ) | |
| of the State of Delaware, | ) | |
| | ) | |
| Respondents.[1] | ) | |

Roland Williams. *Pro se* petitioner.

Elizabeth R. McFarlan, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for respondents.

**MEMORANDUM OPINION**

April 14, 2008
Wilmington, Delaware

---

[1] Attorney General Joseph R. Biden, III assumed office in January, 2007, replacing former Attorney General Carl C. Danberg, an original party to this case, and Warden Michael DeLoy replaced Warden Richard Kearney, an original party to this case. *See* Fed. R. Civ. P. 25(d)(1).


Sleet, Chief Judge

## I. INTRODUCTION

Petitioner Roland Williams ("Williams") is an inmate at the Sussex Correctional Center in Georgetown, Delaware. Williams filed the pending petition for a writ of habeas corpus ("petition") pursuant to 28 U.S.C. § 2254. (D.I. 1) For the reasons that follow, the court will dismiss his petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

As detailed by the Delaware Supreme Court in Williams' direct appeal of his first trial, the facts of his case are as follows:

> On the evening of February 15, 2001, police were conducting surveillance of the Kent Apartments on New Street in Dover, Delaware, a high drug area. Officer Hosfelt of the Dover Police Department was positioned behind a second floor window with an unobstructed view of New Street, which was about fifty feet from the window. Officer Hosfelt observed Williams on the street below, and saw him approach a car that had pulled over in front of the Kent Apartments. Through an open window, Officer Hosfelt heard Williams ask the driver of the vehicle what he wanted. The driver was one William Scott, who drove to New Street that evening, alone, in order to purchase cocaine. Scott testified that he asked Williams for a twenty dollar piece of crack cocaine.
>
> Officer Hosfelt further testified that he saw Scott hand Williams some money. Then, according to the officer, a third man came out of a nearby residence and took the money from Williams. That man then passed drugs to Williams, which Williams immediately handed to Scott. At this point, Officer Hosfelt radioed in what he had witnessed and Scott was apprehended a short distance away. The police found a piece of crack cocaine in a baggie in Scott's car. Meanwhile, Officer Hosfelt maintained surveillance of Williams and directed another police car to respond to his location and place Williams under arrest. After his arrest, Scott was brought back to the scene of the drug buy and asked to identify the seller. By this time, Williams had already been arrested. Scott identified Williams as the person who sold him the crack cocaine.
>
> At trial, Williams testified in his own defense that the third man [identified during the trial as Steffone Powell] had conducted the drug deal with Scott entirely on his own, and that he, Williams, was simply in the wrong place at the wrong time.

*Williams v. State*, 803 A.2d 927, 928 (Del. 2002).

Williams was arrested in February 2001 and subsequently indicted on charges of delivery of cocaine and related offenses. In August 2001, a Superior Court jury convicted Williams of delivery of cocaine. *See Williams v. State*, 803 A.2d 927 (Del. 2002). The Superior Court sentenced Williams as an habitual offender to life in prison. Williams appealed, and the Delaware Supreme Court reversed and remanded Williams' conviction because of inappropriate prosecutorial remarks made during the closing argument. *Id.*

Upon re-trial in January 2003, a Superior Court jury convicted Williams of delivery of cocaine. On May 23, 2003, the Superior Court sentenced Williams as an habitual offender to life in prison. (D.I. 17, Sentence Order.) Williams appealed, and the Delaware Supreme Court affirmed his conviction and sentence. *Williams v. State*, 850 A.2d 303 (Table), 2004 WL 1284199 (Del. June 4, 2004).

In December 2004, Williams filed a motion for post-conviction relief pursuant to Delaware Superior Court Rule 61 ("Rule 61 motion"), asserting four claims of ineffective assistance of counsel and two claims of prosecutorial misconduct. (D.I. 1, Comm'r. R & R in *State v. Williams*, IK01-03-053-R1.) After considering the defense attorney's affidavit and the State's response, a Superior Court Commissioner filed a Report and Recommendation to the Superior Court that Williams' Rule 61 motion be denied. *Id.* More specifically, the Commissioner opined that the prosecutorial claims were barred by Superior Court Criminal Rule 61(i)(3) due to Williams' failure to raise them on direct appeal, and the ineffective assistance of counsel claims were meritless. *Id.* Williams appealed the Commissioner's decision, but the Delaware Supreme Court dismissed the appeal for lack of jurisdiction because the appeal was

interlocutory. *Williams v. State*, 2005 WL 2233218 (Del. Sept. 12, 2005). On November 7, 2005 the Superior Court adopted the Commissioner's Report and Recommendation, and denied Williams' Rule 61 motion. (D.I. 14, Super. Ct. Crim. Dkt. in *State v. Williams*, Entry No. 102.) Williams did not appeal the Superior Court's decision.

Williams filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and the State filed an answer. (D.I. 1; D.I. 12.) Williams' petition is ready for review.

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)(internal citations and quotation marks omitted). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see Woodford*, 538 U.S. at 206.

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Nevertheless, such unexhausted claims are procedurally defaulted. *Lines*, 208 F.3d at 160. Similarly, if a state court refused to consider a petitioner's claims for failing to comply with an independent and adequate state procedural rule, the claims are deemed exhausted but procedurally defaulted. *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Werts*, 228 F.3d at 192.

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). A petitioner can demonstrate actual prejudice by showing "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United States,* 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

**C. Standard of Review Under AEDPA**

If a federal court determines that a claim is not procedurally defaulted and the state court

5

adjudicated the federal claim on the merits, the court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim is considered to have been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d)(1) if the state court "decision finally resolv[es] the parties claims, with *res judicata* effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004)(internal citations omitted), *rev'd on other grounds by Rompilla v. Beard*, 545 U.S. 374 (2005).

When reviewing a § 2254 petition, a federal court must presume the state court's determinations of factual issues are correct, unless the petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

Williams asserts the following four grounds for relief in his petition: (1) defense counsel provided ineffective assistance by failing to present evidence of prosecutorial bias in her motion

to have a different prosecutor assigned to Williams' re-trial; (2) defense counsel provided ineffective assistance by failing to object to the false testimony of Officer Hosfelt and William Scott; (3) defense counsel provided ineffective assistance by failing to call Sherelle Morris and Steffone Powell[2] to testify at trial; and (4) the prosecutor improperly permitted William Scott to present false testimony during Williams' trial.[3]

Williams did not present his prosecutorial misconduct claim to the Delaware Supreme Court when he appealed his re-trial.[4] Further, although Williams presented all four claims to the Superior Court in his Rule 61 motion, he did not appeal the Superior Court's denial of the claims to the Delaware Supreme Court. Therefore, Williams has failed to exhaust state remedies for any of the four claims presented in this habeas proceeding.[5]

At this juncture, state procedural rules would bar Williams from obtaining further review

---

[2]Steffone Powell is the third person involved in the drug sale that took place on February 15, 2001, and the police never apprehended him with respect to that sale. *See* (D.I.1, at p. 159 of transcript.) Sherrelle Morris is the person Williams' contends he was talking to shortly before the police arrived on the night of the drug sale. *Id.* at Exh. "E". According to defense counsel's investigator, Sherrelle Morris remembered seeing the police arrive on the night in question, but she denied seeing the drug sale or knowing anything about such sale. *Id.* at Exh. "F"-"H".

[3]Although, in his petition, Williams does not identify the person who allegedly provided the false testimony, he did explicitly identify William Scott as the alleged perjurer in his Rule 61 motion. *See* (D.I. 1, Comm'r. R & R. at pp. 4-5.)

[4]The sole claim raised in Williams' direct appeal of this re-trial was that the Superior Court abused its discretion in denying defense counsel's motion to have a new prosecutor assigned to Williams' re-trial. (D.I. 17, Appellant's Op. Br. in *Williams v. State*, No.309,2003.)

[5]Williams' appeal of the Commissioner's Report and Recommendation was denied as interlocutory, and therefore, did not exhaust state remedies. *See, e.g., Correa v. Carroll*, 2004 WL 1822123, at **3 (D. Del. Aug. 13, 2004)(explaining that an interlocutory appeal does not constitute "fair presentation" for exhaustion purposes).

of the four claims in the Delaware courts.[6] Consequently, the claims are deemed exhausted but procedurally defaulted, and the court can only reach the merits of claims one through four if Williams demonstrates cause for his procedural default and prejudice resulting therefrom, or that a miscarriage of justice will result in the absence of habeas review.

Williams has not asserted, and the court cannot discern, any cause for his default of the ineffective assistance of counsel claims because he does not explain his failure to appeal the Superior Court's denial of his Rule 61 motion. However, Williams does attempt to establish cause for his default of claim four by blaming counsel for not raising the issue in his direct appeal of his re-trial. *See* (D.I. 1.) The record reveals that Williams did not present this particular allegation to the Superior Court in his Rule 61 motion.[7] Consequently, Williams' allegation regarding counsel's failure to raise the issue of prosecutorial misconduct during the appeal of his re-trial is itself procedurally defaulted, and therefore, cannot constitute cause for his procedural default of claim four. *See Edwards v. Carpenter*, 529 U.S. 446, 453-54 (2000).

In the absence of cause, the court does not need to address the issue of prejudice.

---

[6]It is too late for Williams to appeal the Superior Court's denial of his Rule 61 motion because more than 30 days have passed since the Superior Court's judgment. *See* Del. Supr. Ct. R. 6(a)(iii). Further, Williams cannot exhaust state remedies by including claims one through four in a new Rule 61 motion and appealing any decision to the Delaware Supreme Court, because Delaware Superior Court Criminal Rule 61(i)(4) would bar review of the claims as previously adjudicated. *See, e.g., Romano v. Bianco*, 2007 WL 4365594, at *3 n.3 (D. Del. Dec. 12, 2007). Additionally, Superior Court Rule 61(i)(3) would bar Williams from raising the prosecutorial misconduct claim in a new Rule 61 motion because he failed to raise the claim on direct appeal. *See, e.g., Mills v. Carroll*, 515 F. Supp. 2d 463, 467-68 (D. Del. 2007).

[7]*See* (D.I. 1, at Comm'r. R & R pp. 4-10.) Even if Williams presented this particular allegation of ineffective assistance of counsel in his Rule 61 motion, Williams did not exhaust state remedies for the claim because he did not appeal the Superior Court's denial of the Rule 61 motion.

8

Additionally, the court cannot review the claims under the miscarriage of justice exception to the procedural default doctrine because Williams has not presented new reliable evidence of his actual innocence. Accordingly, the court will deny claims one, two, three, and four as procedurally barred.

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

The court concludes that it is procedurally barred from reviewing the merits the claims asserted in Williams' petition. Reasonable jurists would not find this conclusion to be debatable. Consequently, the court declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Williams' petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROLAND WILLIAMS, | ) |
|     Petitioner, | ) ) ) |
| v. | ) ) Civ. A. No. 06-142-GMS |
| MICHAEL DELOY, Warden, and JOSEPH J. BIDEN, III, Attorney General of the State of Delaware, | ) ) ) ) ) |
|     Respondents. | ) |

**ORDER**

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED that:

1. Petitioner Roland Williams' petition for the writ of habeas corpus filed pursuant to 28 U.S.C § 2254 is DISMISSED, and the relief requested therein is DENIED. (D.I. 1.)

2. The court declines to issue a certificate of appealability due to Williams' failure to satisfy the standards set forth in 28 U.S.C. § 2253(c)(2).

Dated: __April 14__, 2008

CHIEF, UNITED STATES DISTRICT JUDGE

FILED

APR 1 5 2008

U.S. DISTRICT COURT
DISTRICT OF DELAWARE